# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

NABAS GROUP, INC., *et al.*,  *

    Plaintiffs,  *

v.                                                  Civil Action No. 8:19-cv-00763-PX

NANOCLEAR, LLC, *et el.*  *

    Defendants.  *

                                                                                 ***

## MEMORANDUM OPINION

Pending before the Court is Defendants NanoClear, NABAS H20, LLC, Frederick Alderson, and Steve Gareleck's motion to dismiss for lack of personal jurisdiction. ECF No. 10. The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, Defendants' motion is denied.

### I.     Background

This breach of contract and misappropriation action concerns Plaintiff NABAS Group, Inc.'s ("NGI's") development of the Nano Air Bubble Aeration System ("NABAS"). ECF No. 1-1 ¶¶ 14, 18, 25. NABAS uses "ultrafine nano bubbles and Hydroxyl Radicals" to clean water without using chemicals or leaving a significant ecological footprint. *Id.* ¶ 14. In 2018, NGI President and CEO, Benjamin Lee, began looking for business partners to invest in and market NABAS. ECF No. 1-1 ¶¶ 17, 20–23. In August 2018, Defendants Alderson and Gareleck, members of NanoPure, LLC, attended a demonstration of NABAS in Fort Myers, Florida. ECF No. 1-1 ¶ 23; ECF No. 27-1 ¶¶ 2–3. Afterward, Alderson and Gareleck discussed with Lee the possibility of forming a joint venture with NGI. ECF No. 27-1 ¶ 4.

Two weeks later, Alderson was driving to Florida from New York when bad weather derailed his travel plans. ECF No. 10-2 ¶ 7. Alderson contacted Lee who booked a hotel for

Alderson in Gaithersburg, Maryland. Lee met Alderson the next morning to ride with him to South Carolina. ECF No. 27-1 ¶ 5–8; ECF No. 10-2 ¶ 7. As to what transpired during the trip from Maryland to South Carolina, the two gentlemen disagree.

Lee attests that during the car ride, he and Alderson discussed the terms under which each respective business would form the joint venture involving NABAS. ECF No. 27 ¶¶ 8–10. Specifically, Lee and Alderson spoke with Gareleck by phone about the joint venture's budget, research and development, and such logistics as leasing physical space in Maryland for a manufacturing facility. ECF No. ¶¶ 9–11. Alderson, in contrast, attests that no business was conducted with Lee during his stay in Maryland and that "the only reason [he] interacted with Lee at all within this State was solely to drive him to South Carolina."[1] ECF No. 10-2 ¶ 7.

In any case, both sides agree that NGI, NanoClear, and Mustard Seed, LLC (a Maryland company owned by Lee's wife, Elizabeth Lee, a Maryland citizen) eventually memorialized a formal joint venture agreement involving the development and marketing of NABAS ("the Agreement"). ECF No. 1-1 ¶ 26; ECF No. 10-2 ¶¶ 9–10; ECF No. 27-1 ¶ 13; *see* ECF No. 10-3. Pursuant to the Agreement, the signatories formed NABAS H20, LLC, ("H20"), which would become the "sole and exclusive sales, marketing, distribution, and product assembly agent for NGI" both in and outside of the United States. ECF No. 10-3 at 1. Under the Agreement, the parties stipulated that H20's "primary role" was to "provide assembly or light manufacturing support for the NABAS" technology, and that the "physical location of the Company's assembly location" was to be "in close proximity to NGI's current location in Maryland." ECF No. 10-3 ¶¶ 4, 8. Further, NGI, also located in Maryland, would provide significant support to H20 by

---
[1] Defendants' motion characterizes Alderson's conversation with Lee as "mere pleasantries of co-passengers set out on a long road trip." ECF No. 10-1 at 10. However, Alderson's sworn affidavit provides no detail about the conversation other than to deny "conduct[ing] business" in Maryland. ECF No. 10-2 ¶ 7.

selling NABAS technology as well as managing "all aspects of NABAS intellectual property" to include "ongoing research and development," "patent filing," and "technical support." ECF No. 10-3 ¶ 4. In return, H20 would hire "NGI technician personnel" including Lee, and would also sublease its Maryland property to NGI. ECF No. 10-3 at 1, ¶ 8.

H20 was to be controlled equally by NGI and Mustard Seed on the one hand and NanoClear on the other. Per the Agreement, NanoClear and Mustard Seed would select an equal number of H20's managers, ECF No. 10-3 ¶ 6, and would each possess equal ownership in H20, ECF No. 10-3 ¶ 5. As to funding, NanoClear would provide $250,000 in "initial capitalization" to H20, which in turn would pay NGI $250,000 as consideration for the use of NABAS technology. *Id.*[2]

In short order, this relationship as memorialized in the Agreement deteriorated. The Complaint avers that Alderson and Gareleck, through NanoClear, entered the Agreement only to steal NABAS technology for their own personal benefit and use. ECF No. 1-1 ¶ 25. In furtherance of this plan, Alderson became H20's sole manager instead of the parties hiring "an equal number of managers selected by both NanoClear and Mustard Seed" as provided in the Agreement. ECF No. 1-1 ¶¶ 31, 35; ECF No. 10-1 at 12. Nor did H20 open its physical facility in Maryland, near NGI. ECF No. 10-4 ¶¶ 6, 8.

Instead, the Complaint maintains that Alderson and Gareleck began marketing NABAS technology to the Saudi Royal family in contravention of the Agreement. ECF No. 1-1 ¶¶ 51–52; ECF No. 27-1 ¶¶ 27–28. Accordingly, Plaintiffs brought this suit in the Circuit Court for Montgomery County, Maryland, alleging breach of contract, fraud, unfair competition, and

---

[2] The plain language of the Agreement does not square with the Complaint allegation that H20 "was to provide NGI with initial funding of $500,000.00 in two $250,000.00 installments." ECF No. 1-1 ¶¶ 32–33. For purposes of this analysis, the distinction is immaterial.

3

deceptive advertising in violation of the Lanham Act. ECF No. 1-1 ¶¶ 57–166. Defendants noted removal and now move to dismiss the Complaint, arguing that the Court lacks personal jurisdiction over all Defendants. ECF Nos. 1, 10.

## II. Standard of Review

On motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). In deciding whether personal jurisdiction exists, the Court accepts all facts averred in the Complaint as true and most favorably to the plaintiffs. *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). The Court may also consider evidence outside the pleadings, construing such evidence in the light most favorably to Plaintiffs and in favor of jurisdiction when possible. *All Risks, Ltd. v. Butler*, No. GLR-15-3146, 2016 WL 4435477, at *2 (D. Md. Aug. 22, 2016) (internal citations omitted); *see, e.g.*, *Wolf v. Richmond Cty. Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984).

## III. Discussion

Defendants seek dismissal solely on the grounds that personal jurisdiction is lacking. Defendants specifically contend that Maryland's long-arm statute does not confer jurisdiction, and even if it had, Defendants lack sufficient ties to afford them adequate due process.

The parties do not dispute that Maryland's long-arm statute applies. ECF No. 10-1 at 13–14; ECF No. 27 at 10–12; *see also* Fed. R. Civ. P. 4(k)(1)(A); *Carefirst of Md., Inc.*, 334 F.3d at 396. Pursuant to the long-arm statute, personal jurisdiction exists for any defendant "who directly or through an agent . . . [t]ransacts any business or performs any character of work or service in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1). Notably, the defendant

4

need not be "physically present" within the state for there to be personal jurisdiction on this basis. *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 671 (D. Md. 2009). Rather, when a defendant's actions "culminate in purposeful activity" in Maryland, personal jurisdiction under the statute is conferred. *Id.*; *see also Sleph v. Radtke*, 76 Md. App. 418, 427 (1988) ("[A]n absence of physical contacts will not defeat the exercise of personal jurisdiction where a commercial actor's efforts have been 'purposefully directed' toward residents of another state."). A defendant may have transacted business in Maryland, for example, by simply paying to a Maryland-based company a 5% down payment under a one-time sales contract. *See Jason Pharm., Inc. v. Jianas Bros. Packaging, Inc.*, 94 Md. App. 425, 428–29, 432–34 (1993).

In addition to satisfying the long-arm statute, Plaintiffs must also show that the Court's exercising personal jurisdiction over the Defendants comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Ellicott Mach. Corp., Inc. v. John Holland Party, Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). Due process is satisfied where the Court maintains either general or specific jurisdiction. General jurisdiction exists only where the foreign defendant's in-state activities amount to "continuous and systematic" contact with the state. *Gov't of Egypt Procurement Office v. M/V Robert E. Lee*, 216 F. Supp. 2d 468, 471 (D. Md. 2002) (quoting *Int'l Shoe Co.*, 326 U.S. at 314–15). Specific jurisdiction exists when the "contacts related to the cause of action . . . create a 'substantial connection' with the forum state." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997) (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

5

Notably, a single contact may be sufficient to create jurisdiction where "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) (quoting *Int'l Shoe Co.*, 326 U.S. at 316); *see also Burger King Corp.*, 471 U.S. at 477–78. "It is not necessary that the defendant ever actually enter the forum state's territory; so long as the defendant has purposefully directed his activities toward the forum state, and the litigation arises from those activities, due process is satisfied." *CoStar Grp., Inc. v. LoopNet, Inc.*, 106 F. Supp. 2d 780, 784 (D. Md. 2000) (citing *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. 408, 414 (1984)). Where, as here, the dispute involves the making and breaking of a contract, courts may consider the parties' prior negotiations, contract terms, and course of dealing to decide whether the "defendant purposefully established minimum contacts within the forum." *Burger King Corp.*, 471 U.S. at 479.

In determining whether specific personal jurisdiction is satisfied, the Court considers "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Engineers Corp.*, 561 F.3d at 277 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)); *Carefirst of Md., Inc.*, 334 F.3d at 397 (4th Cir. 2003).[3] As to reasonableness, the Court considers the burden on the defendant of litigating in this forum; the forum's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; and the shared interest of the states in obtaining

---

[3] The Court will not look to Defendants' nationwide contacts under the Fifth Amendment's Due Process Clause because the Lanham act does not authorize nationwide service. *See Autoscribe Corp. v. Goldman & Steinberg*, 47 F.3d 1164 (4th Cir. 1995) (unpublished table decision); *Knot Just Beads v. Knot Just Beads, Inc.*, 217 F. Supp. 2d 932, 933 (E.D. Wis. 2002).

efficient resolution of disputes and furthering substantive social policies. *Hausfeld v. Love Funding Corp.*, 16 F. Supp. 3d 591, 603 (D. Md. 2014). Only in "highly unusual cases" will "inconvenience . . . rise to a level of constitutional concern." *ESAB Grp.*, 126 F.3d at 627. This is especially so when considering that "[m]odern means of communication and transportation" have undoubtedly lessened the burden and expense of litigation in other fora. *Republic of Pan. v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 947–48 (11th Cir. 1997); *see also ESAB Grp.*, 126 F.3d at 627 (finding personal jurisdiction despite some inconvenience of New Hampshire defendants litigating in South Carolina).

With these standards in mind, the Court turns to Defendants' motion.

**A. H20**

The Court is satisfied that it maintains personal jurisdiction over H20 in that its very formation under the Agreement purposefully involved this forum. Under the Agreement, H20's physical presence would be in Maryland, and one of its primary functions would be to assemble NABAS and provide technical support to NGI by virtue of its physical proximity to the Maryland-based company. Thus, by virtue of the Agreement, H20 plainly conducted business in Maryland. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1).

Defendants respond that H20's contacts with the forum state were far more limited than contemplated in the Agreement, and thus were insufficient to confer jurisdiction. *See* ECF No. 10-1 ¶¶ 27–31. The Court cannot agree. That Defendants allegedly breached the express terms of the very Agreement which demonstrated H20's purposeful intent to do business in Maryland strengthens the broader concerns of maintaining such litigation in the same state affected by the breach. Jurisdiction under Maryland's long-arm statute is therefore satisfied. *Cf. Jason Pharm.*, 94 Md App. at 428–29, 432–34.

Further, exercising personal jurisdiction over H20 does not offend due process. Applying the minimum contacts test, the Court finds that H20 purposefully availed itself of significant contact with the state, namely through the Agreement. H20 indeed was formed to conduct business in Maryland by joining forces with Maryland-based NGI. In this respect, and contrary to Defendants' contentions, *see* ECF No. 10-1 at 14–15, jurisdiction is not based on Plaintiffs' "contract with an out-of-state party *alone*," *Burger King Corp.*, 471 U.S. at 478 (emphasis in original). Rather, the agreement "'envision[ed] continuing and wide-reaching contacts' in the forum State," to include the establishment of a physical plant in Maryland. *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (quoting *Burger King Corp.*, 571 U.S. at 479–80). Additionally, the claims in this case stem directly from the breach of the Agreement. Thus, the forum state lies at heart of this action.

Defendants contend that Maryland's interests in retaining jurisdiction are diminished because the parties agreed that South Carolina law will govern any dispute arising under the Agreement. *See* ECF No. 10-1 at 17; ECF No. 10-2 ¶ 25. The choice of law provision in the Agreement does not diminish that H20 agreed with do business in Maryland with a Maryland-based corporation. Consequently, this forum maintains an interest in "protecting its citizens from tortious activities" notwithstanding the choice of law provision. *Baker & Kerr, Inc. v. Brennan*, 26 F. Supp. 2d 767, 770 (D. Md. 1998).

The Court also finds that exercising jurisdiction over H20 is constitutionally reasonable. Although H20 generally contends that litigation in Maryland visits a hardship, H20 provides no detail as to how it will be any more inconvenienced beyond that which occurs in litigation generally. In this respect, this case does not present one of those "highly unusual" instances where "inconvenience . . . rise[s] to a level of constitutional concern." *ESAB Grp.*, 126 F.3d at

627. H20 has provided no other grounds by which the Court could find that exercising personal jurisdiction would constitute a due process violation. Thus, the motion as to H20 is denied.

### B. NanoClear

Similarly, jurisdiction under Maryland's long-arm statute is satisfied as to NanoClear because the company transacted business in Maryland. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1). NanoClear was established expressly for the purpose of entering into the Agreement with a Maryland-based company, NGI, and to contribute to the establishment of H20 in Maryland. The Complaint also avers that NanoClear misappropriated the NABAS technology that it obtained from NGI. Such ties with the forum state are sufficient.

Personal jurisdiction as to NanoClear also complies with due process. The Complaint allegations concern NanoClear's breach of the Agreement by misappropriating the intellectual property of Maryland-based NGI. ECF No. 1-1 ¶¶ 101–50. Further, for the same reasons discussed as to H20, exercising jurisdiction is also reasonable. Litigating this suit in Maryland may represent some inconvenience to NanoClear, but NanoClear has given this Court no basis to conclude that such inconvenience amounts to a constitutional due process deprivation. NanoClear's motion is likewise denied.

### C. Alderson and Gareleck

As to Alderson and Gareleck, the same conclusion follows. Each transacted business in Maryland sufficient to confer jurisdiction under the long-arm statute. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1). Alderson acted as H20's manager and, along with Gareleck, owned and operated NanoClear. Alderson and Gareleck, moreover, formed NanoClear for the singular purpose of forming the joint venture with Lee and NGI. As part of the joint venture, Gareleck paid $54,000 to NGI with a personal check. Given Alderson and Gareleck's personal

involvement with a venture so purposefully designed to conduct business in Maryland, Alderson and Gareleck are subject to this Court's personal jurisdiction under Maryland's long-arm statute.[4]

For largely the same reasons, jurisdiction over Alderson and Gareleck is constitutionally proper because each maintained sufficient "personal contacts with or personal availment of the forum state." *Planet Techs., Inc. v. Planit Techs. Grp., LLC*, 735 F. Supp. 2d 397, 402 (D. Md. 2010). The Complaint alleges that Alderson and Gareleck conspired to form NanoClear so as to "misappropriate NABAS technology for the ultimate benefit of NanoClear, Alderson, and Gareleck." ECF No. 1-1 ¶¶ 158–62. The individual defendants' direct role in breaching the Agreement and taking NABAS technology from Maryland-based NGI for their own personal enrichment is sufficient to satisfy due process. *See Calder v. Jones*, 465 U.S. 783, 790 (1984). And nothing before the Court suggests that litigating this matter in this forum would visit a constitutionally impermissible burden on either Alderson or Gareleck. The motion is likewise denied as to the individual Defendants.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction is denied. A separate order follows.

| 11/20/2019 | /s/ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |

---

[4] The parties vigorously dispute whether Alderson and Gareleck conducted business during the drive from Maryland to South Carolina. At this stage, the Court must credit Lee's affidavit which confirms that the parties were mapping out the particulars of the business venture memorialized in the Agreement. *Universal Leather*, 773 F.3d at 558. However, even if the Court disregarded this disputed evidence, the individual Defendants' ties to this forum are nonetheless sufficient.